UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JORGE CORREIA, et al.,              )
                                    )
         Plaintiffs,                )
                                    )
v.                                  )    Civil No. 12-10828-NMG
                                    )
THE TOWN OF FRAMINGHAM, et al.,     )
                                    )
         Defendants.                )
_____ )

REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION TO AMEND (DOC. NO. 51)

July 24, 2013

SOROKIN, C.M.J.

The plaintiffs seek permission to amend their complaint to add three new defendants, all of whom are members of the Framingham Police Department, to existing claims related to one of the two civil rights conspiracies alleged in this action. See Doc. Nos. 51, 52. The proposed defendants object, arguing the request to amend is both untimely and futile. See Doc. No. 53. For the reasons that follow, I recommend the plaintiffs' motion to amend be DENIED.

I.   BACKGROUND[1]

The plaintiffs allege that on April 29, 2010, defendant Scott Brown, a Framingham police officer, drove his unmarked police car into the driveway of an EZ Storage facility where the plaintiffs lived and worked, and then urinated in the driveway. Doc. No. 1-1 at ¶¶ 6-8. When confronted by plaintiff Cathleen Runnals, Brown exposed himself and told Runnals she "should not be looking." Doc. No. 1-1 at ¶¶ 8-9. Plaintiff Jorge Correia arrived and an altercation

_____
[1]The facts are drawn from the plaintiffs' complaint, Doc. No. 1-1, and the parties' submissions related to the pending motion.

ensued, during which the plaintiffs allege Brown brandished a gun while ordering Correia to move. Id. at ¶¶ 10-12. The plaintiffs reported the incident to the Framingham Police, and defendant Brian Blue interviewed them soon thereafter. Id. at ¶¶ 13-14. The plaintiffs allege that, instead of investigating, writing a report, or preserving surveillance footage of the incident, Blue simply notified Brown of the allegations. Id. at ¶¶ 14-16.

At the time of the incident, Brown had been accompanied by his partner, Officer Leonard Pini. Doc. No. 52 at 4-5. Pini allegedly had been drinking with Brown while on duty before the incident, and later lied to internal affairs investigators when interviewed about the incident. Id. Another Framingham police officer, Michael Esposito, learned of the incident on May 3, 2010. Doc. No. 52-1 at ¶ 33. When Pini was suspended following the incident, Esposito allegedly urged Steven Carl, the Chief of Police, to reinstate Pini without punishment. Id. at ¶ 49. The plaintiffs also allege Esposito attempted to undermine their credibility, intimidated the officer investigating the incident, and offered to lie for Carl. Id. at ¶¶ 49-50. According to the plaintiffs, these actions were part of a larger police effort to conceal Brown's misconduct. See id. at ¶ 56.

That conspiracy, the plaintiffs suggest, continued during the litigation of this case. The plaintiffs cite an interrogatory response, signed by Carl, denying that Brown had asserted his Fifth Amendment rights when questioned about the incident by internal affairs investigators. Doc. No. 52 at 6-7. Pointing to the testimony of other police department witnesses that Carl was present when Brown did, in fact, assert his right to remain silent (and, further, that Carl personally instructed investigators to communicate directly with Brown's attorney), the plaintiffs allege Carl's interrogatory response was a lie intended to further the conspiracy to protect

Brown. Id.; Doc. No. 52-1 at ¶¶ 51, 56.

In their original complaint, the plaintiffs included state and federal claims that defendants Brown and Blue conspired to violate their due process rights by covering up Brown's misconduct. Doc. No. 1-1 at ¶¶ 40-41. With their motion to amend, the plaintiffs seek to add Pini, Esposito, and Carl as defendants in connection with those conspiracy claims. Doc. No. 52-1 at ¶¶ 66-67.

II.     DISCUSSION

The proposed defendants oppose the plaintiffs' motion on two grounds. First, they briefly assert the request to amend is untimely in light of the deadlines included in the District Court's scheduling order. Doc. No. 53 at 1-2 (citing Doc. No. 28). Second, they argue that the amendment sought would be futile, suggesting the plaintiffs have failed to allege a constitutional violation by the three proposed defendants and, even if they had, qualified immunity would apply because the right at issue is not "clearly established." Id. at 2-6. Although the first argument is unpersuasive,[2] the defendants are correct that the proposed amendment is futile

---

[2]The plaintiffs have established good cause for seeking permission to amend after the September 30, 2012 deadline contained in the Rule 16 Scheduling Order. Doc. No. 28; see Flores-Silva v. McClintock-Hernandez, 710 F.3d 1, 3 (1st Cir. 2013) (holding that the Rule 15(a) "freely given" standard ceases to apply to motions to amend pleadings upon entry of a scheduling order, whereupon the less liberal "good cause" standard of Rule 16(b) applies). The information which led them to link Pini, Espinsoza, and Carl to their conspiracy claim was not provided to them until long after the Court's deadline had passed. See Doc. No. 52 at 7-8; Doc. No. 90 at 5. In fact, it was not provided to them at all by the defendants in discovery; rather, the plaintiffs learned of it only through documents received after they subpoenaed files maintained by the Middlesex County District Attorney's Office. Doc. No. 52 at 7-8. The defendants have not explained why they failed to produce the information – which is plainly relevant and discoverable – themselves. See generally Doc. No. 53. The plaintiffs further explored the new information through depositions and, within a week of the final deposition, moved to amend their complaint. See Doc. No. 90 at 4-5.

3

insofar as it seeks to add claims against Pini, Esposito, and Carl stemming from an alleged conspiracy to cover up Brown's conduct.

Motions to amend are properly denied where the desired amendment would be futile. Flores-Silva, 710 F.3d at 3. An amendment is futile if it fails "to state a claim sufficient to survive a motion to dismiss" pursuant to Rule 12(b)(6). Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006). The amended complaint seeks to add the three proposed defendants to two existing claims – conspiracy to violate § 1983, and conspiracy to violate chapter 12, section 11 of the Massachusetts General Laws. Doc. No. 52-1 at ¶¶ 66-67. To state a claim for a civil rights conspiracy, the plaintiffs must allege an agreement among the conspirators and "an actual deprivation of a right secured by the Constitution and laws" of the United States.[3] Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). Although the original complaint alleged the "cover-up conspiracy" violated the plaintiffs' rights to substantive and procedural due process, Doc. No. 1-1 at ¶¶ 40-41, the proposed amended complaint simply alleges a deprivation of "their constitutional rights" generally, Doc. No. 52-1 at ¶¶ 66-67.

The proposed defendants argue the amended complaint fails to state a claim against them because the plaintiffs accuse them of participating in a civil rights conspiracy "without identifying an actual violation of a constitutional right." Doc. No. 53 at 2. In response, the plaintiffs suggest the defendants improperly seek to impose a heightened pleading standard.

---

[3]The Massachusetts statute requires allegations of "threats, intimidation or coercion" aimed at interfering with the exercise of state or federal constitutional rights. Mass. Gen. Laws ch. 12, §§ 11H, 11I; see Gonsalves v. City of New Bedford, 939 F. Supp. 921, 926 n.15 (D. Mass. 1996). The plaintiffs do not allege Pini, Esposito, or Carl engaged in conduct rising to that level. Cf. Doc. No. 52-1 at ¶¶ 68-69 (alleging a separate conspiracy "to intimidate plaintiffs," not involving the three proposed defendants).

Doc. No. 90 at 1-3. They further argue identification of the constitutional violation is "simple," specifying two possible violations: 1) "an attempt to 'cover-up' a violation of the plaintiffs' clearly established constitutional right to be free from police assault" is "a conspiracy to interfere with that right"; and 2) an "attempt to discredit a citizen who has complained against the police or subject that citizen to further embarrassment or harassment as retaliation for reporting a violation of their civil rights [is] egregious and shocking to the 'contemporary conscience.'" Id. at 3. The plaintiffs, however, have cited no decisions of the Supreme Court, the First Circuit, or any session of this Court in which an alleged cover-up of police misconduct has been found either to subject those involved in the cover-up to liability for the underlying misconduct, or to rise to the level of a substantive due process violation, see id., nor is the Court aware of any such cases. Cf. Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000) (finding a "majority of the conduct alleged by [the plaintiffs] was not physically intrusive or violent, nor did it 'strike at the basic fabric' of any protected relationship" and, thus, was not sufficiently egregious "to justify the unusual step of finding" a substantive due process claim had been alleged).[4]

    The only case the plaintiffs do cite, from a federal trial court in Maine, concludes without discussion or citation to other authorities that officers allegedly involved in covering up information related to the use of excessive force might be exposed to liability for "efforts to

---

[4]The Court notes that the facts presented in Cruz-Erazo were more egregious than those alleged here. See 212 F.3d at 618-20 (describing a series of events in which an off-duty police officer refused for months to move out of a home owned by the plaintiffs, threatened and harassed the plaintiffs, destroyed property belonging to the plaintiffs, and physically pushed the plaintiffs' pregnant daughter who then miscarried; fellow officers refused to accept the plaintiffs' complaints or accompany them to the home to change the locks, and assisted in instituting burglary charges against the plaintiffs for entering their own property).

deprive" the plaintiff "of his § 1983 right of action as to the alleged use of excessive force." Comfort v. Town of Pittsfield, 924 F. Supp. 1219, 1229 (D. Me. 1996). However, more recent – and more persuasive – decisions foreclose such a claim here. Those decisions require allegations that the cover-up prevented the plaintiffs from seeking redress in court, deprived them of damages they otherwise would have received, or otherwise rendered ineffective the remedies available via court action, before a § 1983 claim arising from the cover-up will lie. See, e.g., Christopher v. Harbury, 536 U.S. 403, 416 (2002) (dismissing denial-of-access-to-court claim where complaint failed to allege "the underlying cause of action and its lost remedy" the plaintiff was denied as a result of the alleged cover-up); Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 423-24 (7th Cir. 2000) (finding alleged cover-up and lack of meaningful police investigation did not give rise to a § 1983 claim where the plaintiffs "were face-to-face participants" in the relevant confrontation with police and, thus, knew the "facts necessary to seek redress for their asserted injuries" and were not prevented from filing suit); Landrigan, 628 F.2d at 742, 745, 746 (assuming a cover-up conspiracy aimed at depriving a plaintiff of access to the courts, if "sufficiently advanced," might be actionable under § 1983, but finding that no constitutional harm flowed from requiring a plaintiff "to pursue normal legal channels to obtain redress," from the "mere existence" of false police reports, or from "perjurious testimony" by police officers); Gonsalves, 939 F. Supp. at 925-26 (concluding § 1983 action might stem from police cover-up only if it were "causally connected to a plaintiff's failure to succeed in her lawsuit").

  The amended complaint does not allege the plaintiffs were prevented from, or meaningfully delayed in, filing suit based on the alleged cover-up, nor does it identify any damages or remedies that are no longer available to them as a result thereof. Indeed, it alleges

no specific harm at all flowing from the efforts of Pini (whose lie to internal affairs investigators was immediately detected, Doc. No. 52-1 at ¶¶ 46-47), Esposito (whose efforts to derail the internal affairs investigation were unsuccessful, id. at ¶¶ 49-50), or Carl (whose interrogatory response was proven false by other information revealed in discovery, id. at ¶¶ 41-42, 51).[5] See also id. at pp. 18-19 (seeking relief identical to that sought in the original complaint); Doc. No. 90 at 3 (admitting that "it is not necessarily a tort," let alone a constitutional violation, "to tell a lie," and that "mere interference with an [internal police] investigation might not cause further injury"). Under the circumstances in this case at this time, the plaintiffs have failed to state legally tenable claims against Pini, Esposito, and Carl for conspiracy to deprive the plaintiffs of a constitutional right and, thus, their motion to amend to add such claims is futile.[6]

---

[5]This is not to say the Court approves of the alleged conduct, or that such conduct might not be deemed relevant to the plaintiffs' existing claims against the Town and its police department.

[6]Because the law does not support a finding that the plaintiffs have identified a constitutional harm flowing from the alleged conspiracy, the Court need not decide whether the plaintiffs have alleged facts sufficient to permit the Court to infer an agreement among the defendants named in the two cover-up conspiracy claims.

Additionally, the Court notes that the proposed amended complaint contains more detailed factual allegations than the original complaint, and its legal claims are edited and reorganized. Compare generally Doc. No. 1-1, with Doc. No. 52-1. It does not appear from the pleadings related to the motion to amend that the focus of the amendment is on this factual elaboration. To the extent that the plaintiffs wish to revise their amended complaint to delete the three proposed new defendants, but to flesh out the facts relevant to their other claims based on information revealed in discovery, such a request would likely be reasonable and could be presented to the Court in a separate motion.

III.     CONCLUSION

Accordingly, I respectfully recommend that the plaintiffs' motion to amend (Doc. No. 51) be DENIED.[7]

       /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge

---

[7] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).