**United States District Court**
**District of Massachusetts**

```
_____
                              )
JORGE CORREIA and             )
CATHLEEN RUNNALS,             )
        Plaintiffs,           )
                              )    Civil Action No.
        v.                    )    12-10828-NMG
                              )
TOWN OF FRAMINGHAM, SCOTT BROWN, )
BRIAN BLUE, DINIS AVILA and   )
MICHAEL STRATTON,             )
        Defendants.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs allege that several police officers of the Town of Framingham, the Town itself, and an officer of the Boston Police Department violated plaintiffs' civil rights by threatening them at their place of work and then conspiring to cover up that conduct and to harass them. Defendants now move for summary judgment on nearly all claims against them while plaintiff Jorge Correia cross-moves for partial summary judgment on his claim for assault and battery.

By prior order, the Court allowed the motion of defendant Sergeant Detective Michael Stratton (Docket No. 64) and denied the motion of plaintiff Jorge Correia for partial summary judgment (Docket No. 68) in accordance with a memorandum to follow. The Court now publishes that memorandum and rules upon the motion of defendants Brown, Blue, Avila and the Town of

-1-

Framingham (Docket No. 58).

## I.  <u>**Factual Background**</u>

On April 29, 2010 plaintiffs Jorge Correia ("Correia") and Kathleen Runnals ("Runnals") were employed as resident property managers at the EZ Storage facility in Framingham, Massachusetts. On that day, defendant Scott Brown ("Brown") and non-party Leonard Pini, both officers in the Framingham Police Department, drove an unmarked police vehicle  onto the facility lot.  Officer Brown, who had allegedly been drinking while attending an awards ceremony earlier that day, got out of the vehicle and urinated near one of the facility buildings.  Plaintiff Runnals, who was working in a nearby office, called out to admonish him.  Officer Brown turned to address her, purportedly exposing himself in the process and then returned to the vehicle and began to drive away.

Plaintiff Correia, driving a golf cart, intercepted defendant Brown as he drove toward the exit.  The two exchanged words after which Correia moved his golf cart out of the way and defendants left the premises in their vehicle.  The nature of their exchange is disputed, i.e. plaintiff Correia claims that defendant Brown turned on the vehicle's blue lights, brandished his firearm and told Correia to "move it or get shot," allegations which defendants deny.

Plaintiffs reported the incident to the Framingham Police Department on the same day and defendant Officer Brian Blue

("Blue") responded to the EZ Storage facility shortly thereafter. Officer Blue interviewed both plaintiffs.  They described the details of the incident, including plaintiff Correia's claim that defendant Brown had threatened him with a firearm while speaking to him.  Plaintiffs also showed Officer Blue a surveillance video of the incident that depicted some of the exchange between plaintiff Correia and Officer Brown, including the moment when Officer Brown purportedly pointed a gun at Correia.  Officer Blue then departed.  He made several phone calls that evening to other officers with the Framingham Police Department ("the Department") but he did not write a police report nor contact his superiors about plaintiffs' allegations.

A few days later, defendant Officer Dinis Avila drove an unmarked police vehicle onto the EZ Storage facility lot, stopped in the vicinity of where defendant Officers Brown and Pini had parked four days earlier and then backed up and drove away. Officer Avila purportedly paused when he noticed plaintiff Runnals observing him from the door of her office, called out "police," and then drove his vehicle off of the lot.  Defendant Officer Avila's intentions are disputed.  Plaintiffs claim to have been threatened by his presence and believe that he came to the facility to intimidate them.  Officer Avila responds that he turned into the facility by mistake, a commonplace occurrence according to defendants.

-3-

Plaintiffs again called the Framingham Police Department, this time prompting an internal investigation.  Plaintiffs met with several Framingham police officers and the Middlesex District Attorney's Office.  Among other actions taken, on May 20, 2010, the Chief of Police, Steven Carl, told plaintiffs that police officers would no longer visit the EZ Storage facility unsupervised.

Plaintiffs subsequently observed two unmarked police vehicles enter and exit the EZ Storage facility.  On May 25, 2010, defendant Sergeant Michael Stratton, a member of the Boston Police Department, drove an unmarked police vehicle onto the facility lot, turned around and drove away.  Plaintiff Runnals, noticing the vehicle, stepped out of her office.  She observed a police uniform hanging above the rear seat of the vehicle, although she and defendant Stratton did not make eye contact, speak or otherwise interact with one another.  Plaintiff Runnals claims that again she felt the police presence was intentional and harassing.  Defendant Sergeant Stratton, meanwhile, responds that he entered the facility lot inadvertently and merely intended to purchase pool supplies from a neighboring store.  On June 1, 2010, plaintiffs observed another unmarked police vehicle drive onto the EZ Storage facility lot, turn around and drive away.

-4-

## II.  **Procedural History**

Plaintiffs brought suit against defendants in Middlesex Superior Court in March, 2012.  The original Complaint includes 12 counts, alleging that: Officer Brown violated federal (Count I) and state (Count II) civil rights of both plaintiffs, the Town failed to train and supervise adequately its officers and is therefore liable for causing plaintiffs' injuries under 28 U.S.C. § 1983 (Count III) and M.G.L.c. 258 (Count IV), Officer Brown assaulted (Counts V, VI) and intentionally inflicted emotional distress (Counts VII, VIII) upon both plaintiffs, Officers Brown and Blue conspired to violate plaintiffs' federal and state civil rights by attempting to cover-up the April, 2010 incident (Counts IX, X), and that Officers Brown, Avila and Stratton conspired to violate plaintiffs' federal and state civil rights by harassing plaintiffs in their home in May, 2010 (Counts XI, XII).

Defendants duly removed the case to this Court in May, 2012. Following extensive discovery, in May, 2013, plaintiffs moved to file an amended complaint (1) to consolidate the state law tort counts, (2) to add factual allegations in support of the existing claims and (3) to add Officers Pini, Michael Esposito and Steven Carl as defendants to the civil rights conspiracy claims based upon a cover-up.  In July, 2013, in a brief but thorough Report and Recommendation, Chief Magistrate Judge Leo T. Sorokin recommended denying the motion to amend because the Amended

Complaint fails to state a claim against proposed defendants Pini, Esposito and Carl.  Neither side objected to that Report and Recommendation and it was subsequently accepted and adopted by this Court.

Following the publication of the Report and Recommendation, plaintiffs, citing a footnote therein, renewed their motion to file an amended complaint which incorporated the same new factual allegations while purporting to "assert no new claims" and "add no new defendants."  The proposed amended complaint did, however, reorder the counts and purport to add the Town as defendant on the conspiracy to cover up plaintiffs' allegations.  The Court denied plaintiffs' renewed motion by endorsement.

The parties filed the pending motions for summary judgment in June, 2013, prior to the resolution of plaintiffs' motion to file an amended complaint.

### III. **Motions for Summary Judgment filed by the Defendants**

Defendant Officers Brown, Blue and Avila, Sergeant Detective Stratton and the Town of Framingham move for summary judgment pursuant to Fed. R. Civ. P. 56 as to all counts of plaintiff's Complaint, except for the allegation by plaintiff Correia that Officer Brown assaulted him (Count V).

### A.    Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine

need for trial." <u>Johnson</u> v. <u>Gordon</u>, 409 F.3d 12, 16-17 (1st Cir. 2005)(quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u>  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. <u>Johnson</u>, 409 F.3d at 17.  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of

law. Id.

**B. Claim for Direct Deprivation of Federal Civil Rights**
(Count I)

Plaintiffs argue that defendant Officer Brown's conduct at the EZ Storage facility deprived them of their substantive due process rights guaranteed by the Fourteenth Amendment. Because the Court finds that Officer Brown's conduct, although arbitrary and capricious, was not so egregious as to "shock the conscience" and violate substantive due process, defendants' motion for summary judgment as to Count I will be allowed.

**1. Direct Deprivations of Substantive Due Process Rights under § 1983**

The Federal Civil Rights Act, codified at 42 U.S.C. § 1983 and hereafter referred to as "§ 1983," affords individuals a cause of action against police officers who, while acting under color of law, deprive them of a right or privilege secured by the Constitution or laws of the United States. Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000). The judicially engrafted doctrine of qualified immunity shields police officers from § 1983 liability if the constitutional right at issue was not "clearly established" at the time of the alleged violation. See, e.g. Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011).

Here, plaintiffs allege that Officer Brown's actions violated their substantive due process rights under the

Fourteenth Amendment.  In general terms, whenever a plaintiff

alleges that certain executive acts violate his substantive due

process rights, he must show

> both that the acts were so egregious as to shock the
> conscience and that they deprived him of a protected
> interest in life, liberty, or property.

Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011)

(citations omitted).

Although there is no "scientifically precise formula," to

determine what may "shock the conscience" and trigger the

protections of the substantive due process clause of the

Fourteenth Amendment, the executive action must be

> truly outrageous, uncivilized, and intolerable [and] the
> requisite arbitrariness and caprice must be stunning....
> Indeed, [a] hallmark of successful challenges is an
> extreme lack of proportionality, as the test is primarily
> concerned with violations of personal rights so severe[,]
> so disproportionate to the need presented, and so
> inspired by malice or sadism rather than a merely
> careless or unwise excess of zeal that it amounted to a
> brutal and inhumane abuse of official power literally
> shocking to the conscience.

Id. As such language makes clear, the Supreme Court has been

"firm in its reluctance to expand the doctrine of substantive due

process." Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d

497, 502 (1st Cir. 2012).  Indeed, the various formulations of

the "shock the conscience" standard deliberately set that bar

high in order to protect the Constitution from "demotion to

merely a 'font of tort law.'" Cummings v. McIntire, 271 F.3d 341,

344 (1st Cir. 2001) (quoting Cnty. of Sacramento v. Lewis, 523

-9-

U.S. 833, 847-48 (1998)).

### 2.   Application

As is often the case when courts are asked to apply the shock-the-conscience standard, the facts here are difficult to categorize.  For instance, the First Circuit Court of Appeals has found violations of substantive due process where police misconduct resulted in the actual shooting of plaintiffs or their relatives. See Guitierrez-Rodriquez v. Cartagena, 882 F.2d 553 (1st Cir. 1989) (finding substantive due process violation when plainclothes officers, absent adequate suspicion, approached parked car at night, discharged firearms and paralyzed plaintiff); see also Fernandez v. Leonard, 784 F.2d 1209, 1213-1215 (1st Cir. 1986); Marrero-Rodriquez, 677 F.3d at 500-02 (1st Cir. 2012).

By contrast, the same Court has found no substantive due process violation when an officer shoved a pedestrian, without any justification, and caused serious physical injury. See Cummings, 271 F.3d at 341.  Similarly, other circuit courts have held that even an "unprovoked attack" by a public official does not, by itself, translate into a substantive due process violation. See Williams v. Berney, 519 F.3d 1216, 1224-25 (10th Cir. 2008) (license inspector who shoved and struck plaintiff in her business, without provocation, may have assaulted plaintiff but did not violate substantive due process); see also id. at

1223-24 (collecting cases from other circuits).

Although the First Circuit has left open the possibility that non-physical harassment and intimidation could "shock the conscience" and violate an individual's substantive due process rights, Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 624 (1st Cir. 2000), it has declined to acknowledge any such violation even under more egregious circumstances.  For example, in Cruz-Erazo, the principal defendant was an off-duty police officer who refused for months to vacate a residence owned by plaintiffs, threatened and harassed them, destroyed their property and physically pushed plaintiffs' pregnant daughter (who then miscarried). See id. at 618-20.  His fellow officers then refused to record plaintiffs' complaints against defendant and, instead, assisted defendant in instituting false charges against the plaintiffs with respect to which defendant offered false testimony. See id.  Describing the question as a "close one," the First Circuit concluded that the sum of the officers' actions were insufficient to "justify the unusual step of finding a violation of substantive due process." Id. at 623; see also Pittsley v. Warish, 927 F.2d 3, 5, 7 (1st Cir. 1991) (finding that actions of defendant police officers, who, while at plaintiffs' residence, threatened to kill one plaintiff and told her children that if they caught their father they would never see him again, were "despicable" but did not violate substantive

-11-

due process).

If a jury credited plaintiffs' account of Officer Brown's conduct, it would undoubtedly consider it offensive, arbitrary and unjustified.  Officers Brown and Pini had no legitimate business to attend to when they entered the EZ Storage facility. Moreover, as plaintiffs claim, Officer Brown had no reason to charge Correia with obstructing police business when he delayed their exit, much less to threaten him with a gun.

Nevertheless, in light of the prevailing case law, the Court concludes, for three reasons, that no reasonable jury could find that the instant allegations were so egregious as to "shock the conscience" and violate plaintiffs' substantive due process rights.

First, plaintiffs did not suffer any physical injury as a result of the incident with Officer Brown.  As the preceding survey of the case law has revealed, even the infliction of physical injury upon plaintiffs as a result of arbitrary police action has not satisfied the high burden imposed by the substantive due process standard. See Cummings, 271 F.3d at 341; Berney, 519 F.3d at 1223-24.

Second, although the First Circuit has theorized that a substantive due process claim may lie based upon threats and intimidation resulting in only emotional injury, Officer Brown's actions, while disgraceful, involved only one incident and were

simply not as egregious as circumstances already deemed insufficient. See Cruz-Erazo, 212 F.3d at 618-20 (discussed supra).

Third, plaintiffs' attempts to distinguish the prevailing case law based upon Officer Brown's complete lack of justification for his actions fall short.  In particular, none of the defendant officers' conduct in Cruz-Erazo was pursuant to any law enforcement or government objective, yet the First Circuit affirmed dismissal of the plaintiffs' substantive due process claim. See id. at 618-20; see also Berney, 519 F.3d at 1224 (defendant lacked authority to use force).

In light of the Court's conclusion, it need not decide whether Officer Brown infringed a cognizable interest of the plaintiffs or is entitled to qualified immunity under § 1983.

### C.   Civil Rights Conspiracy Claims under § 1983
    (Counts IX, XI)

Plaintiffs allege that defendants conspired to violate their federal constitutional rights by 1) failing to file a police report of the April 29, 2010 incident and otherwise attempting to cover up that incident (Count IX) and 2) interfering with plaintiffs' pursuit of their occupation through continued intimidation and harassment thereafter (Counts XI).

Because the Court concludes that neither alleged conspiracy involved an agreement to deprive plaintiffs of a constitutional right, defendants' motions for summary judgment will be allowed

in that respect.

### 1.   Conspiracies to Violate Civil Rights

A civil rights conspiracy is commonly defined as

a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)).  In order for an agreement to be actionable under § 1983, of course, there must be "an actual deprivation" of a constitutional right. See Earle, 850 F.2d at 844 (citation omitted).

### 2.   Application

Even assuming that defendant Officers Brown, Blue and Avila agreed to inflict the various wrongs that plaintiffs have identified, neither the cover-up conspiracy nor the conspiracy to intimidate and harass plaintiffs constitute deprivations of constitutional rights.

The Court essentially examined and rejected plaintiffs' cover-up conspiracy claim when it accepted and adopted the Magistrate Judge's Report and Recommendation and denied as futile plaintiffs' motion to file an amended complaint.  As Chief Magistrate Judge Sorokin explained, such a conspiracy fails to state a claim because: (1) plaintiffs have failed to cite any

binding or convincing authority in which a conspiracy to cover-up an alleged constitutional violation has risen to the level of a separate constitutional deprivation, and (2) courts that have entertained such claims require the cover-up to impact the plaintiff's ability to obtain judicial redress, allegations which are lacking here. <u>See</u> Rep. and Rec. on Pltf's Mot. to File an Am. Compl., Docket No. 97, at 5-6 (collecting cases).

Moreover, the filing of a false police report does not, by itself and without further consequences to the plaintiff, violate § 1983. <u>Landrigan</u> v. <u>City of Warwick</u>, 628 F.2d 736, 745 (1st Cir. 1980). This Court is persuaded that an officer's failure to file a police report, in furtherance of an alleged conspiracy to cover-up wrong-doing, does not constitute an independent constitutional violation and therefore cannot support plaintiffs' cover-up conspiracy claim. <u>Cf.</u> <u>Bush</u> v. <u>City of Philadelphia</u>, Civ. No. 98-0994, 1999 WL 554585, at *4-7 (E.D. Pa. July 16, 1999) (failure to file police report related to a car accident, when it interfered with plaintiff's recovery of insurance payment, did not violate § 1983).

Plaintiffs also allege a campaign by the defendant officers to intimidate and harass them in violation of their substantive due process rights which "shocks the conscience" and interfered with their fundamental right to pursue their occupation. First, although plaintiffs attempt to incorporate Officer Brown's

alleged brandishing of a weapon into the conspiracy allegations,
there is no evidence that those actions were the product of an
illicit agreement among the defendant officers.  Absent such
evidence, defendant Officers Avila and Stratton cannot be held
responsible for Officer Brown's alleged misconduct.  See
Landrigan, 628 F.2d at 742 (conspiracy to cover-up constitutional
violation does not  subject conspirators to liability for the
underlying violation).

     The purported illicit agreement between defendants Brown,
Avila and Stratton allegedly led to deliberate, unauthorized
visits to the EZ Storage facility in which 1) Officer Avila made
eye contact with plaintiff Runnals and announced "Police" and 2)
Sergeant Stratton and another unnamed police officer drove on to
and off plaintiffs' premises in unmarked vehicles without
interacting with either plaintiff.  As has been explained,
however, the First Circuit has yet to recognize a substantive due
process violation based upon non-physical harassment and
intimidation.  See Cruz-Erazo v. Rivera-Montanez, 212 F.3d at 624.
This Court has already concluded, based upon operative First
Circuit case law, that Officer Brown's threatening conduct was
insufficiently egregious to "shock the conscience."  Accordingly,
the instant allegations of non-physical harassment, while
reprehensible, fail to demonstrate that defendant Officers Brown,
Avila and Stratton conspired to violate plaintiffs' substantive

due process rights.

**D.   State Civil Rights Claims** (Counts II, X, XII)

The Massachusetts Civil Rights Act ("the MCRA"), M.G.L.c. 12, § 11 is "coextensive with 42 U.S.C. § 1983," except that it does not require state action but rather that the derogation of plaintiffs' secured rights occurred as a result of "threats, intimidation or coercion". <u>Sietins</u> v. <u>Joseph</u>, 238 F. Supp. 2d 366, 377-78 (D. Mass. 2003) (citations omitted).

Plaintiffs' civil rights claims pled under state law for direct deprivation (Count II) and for civil rights conspiracies (Counts X, XII) are identical to the claims pled under federal law.  Because the two statutes are coextensive, the Court will dismiss Counts II, X, XII for the reasons explained in the two preceding subsections.

**E.   Municipal Liability under § 1983** (Count III)

Plaintiffs also allege that the Town deprived them of their civil rights, in violation of § 1983, because it failed adequately to train and supervise its officers in a number of ways which resulted in the officers' improper retaliation. Defendants' motion for summary judgment on that count will be allowed.

Municipalities may only be held liable under § 1983 if the governmental body causes a person to be subjected to a deprivation of a constitutional right. <u>Connick</u> v. <u>Thompson</u>, 131

S. Ct. 1350, 1359 (2011). Here, plaintiffs claim that defendants' actions deprived them of their substantive due process rights but this Court has already concluded that neither Officer Brown's misconduct on April 29, 2010, nor the purported subsequent retaliatory actions deprived plaintiffs of their substantive due process rights. Accordingly, even if the Town "caused" the alleged conduct, it did not deprive plaintiffs of their constitutional rights.

**F.  State Law Tort Claims** (Counts VI, VII, VIII)

Defendants move for summary judgment on the claim of plaintiff Runnals for assault and battery against Officer Brown (Count VI) and on the claims of both plaintiffs for the intentional infliction of emotional distress ("IIED") against Officer Brown (Counts VII, VIII). The Court will allow defendants' motion on Runnals' claim for assault and battery, which plaintiffs have withdrawn, but deny defendants' motion as to plaintiffs' claims for IIED.

To maintain a cause of action for IIED under Massachusetts law, a plaintiff must establish that (1) defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused the plaintiff's distress; and (4) plaintiff suffered severe distress. Sena v. Com., 629 N.E.2d 986, 994 (Mass. 1994) (citation omitted); see

also <u>Fredette</u> v. <u>Allied Van Lines, Inc.</u>, 66 F.3d 369, 374 (1st Cir. 1995).

Defendants argue that Officer Brown is entitled to summary judgment because his alleged conduct was not "extreme and outrageous" and plaintiffs have failed to adduce evidence that they suffered "severe" emotional distress. Considering the inherent subjectivity in an IIED claim and taking the facts in the light most favorable to the plaintiffs, genuine issues of material fact remain on both issues that preclude the allowance of summary judgment. None of Officer's Brown actions, i.e. the alleged indecent exposure, swearing and the brandishing of his weapon was legally necessary or justified. <u>Cf.</u> <u>Spencer</u> v. <u>Roche</u>, 755 F. Supp. 2d 250, 269 (D. Mass. 2010) (conduct that is "legally required" cannot be extreme and outrageous) (citation omitted). A reasonable jury could conclude that such conduct by a police officer was sufficiently outrageous to support a finding of IIED. Furthermore, if the testimony of plaintiffs and their expert psychiatrist is credible, the jury could find that both plaintiffs suffer from post-traumatic stress disorder and moved out of Framingham in order to avoid further confrontation with defendants. Such damages could be deemed sufficiently severe to state a claim for IIED. <u>Cf.</u> <u>Kennedy</u> v. <u>Town of Billerica</u>, 617 F.3d 520, 531 (1st Cir. 2010) (fear of police, nightmares insufficiently severe when no evidence of psychiatric symptoms or

severe life disruptions offered).

**G.   Negligent Supervision under State Law** (Count IV)

Defendants move for summary judgment on plaintiff's claim that the Town negligently supervised and trained its police officers.  The Massachusetts Tort Claims Act creates a limited waiver of sovereign immunity such that municipalities may be held liable "in the same manner and to the same extent as private individuals under like circumstances." Sharon v. City of Newton, 769 N.E.2d 738, 748 (Mass. 2002) (quoting M.G.L.c. 258, § 2). Massachusetts courts, however, have allowed supervisory negligence claims against municipalities only when the "municipality knew or should have known about an underlying, identifiable tort which was committed" by specific public employees. Kennedy, 617 F.3d at 533.

Plaintiffs claim that the Town knew of the April 29, 2010 incident, and of plaintiffs' complaint, but failed to prevent defendant Officer Avila from harassing plaintiffs several days later, i.e. when he purportedly rolled down his window and announced "police" to plaintiff Runnals.  Plaintiffs further claim that Avila's visit constituted IIED, which the Town negligently failed to prevent, and finally that, despite the assurance of the Chief of Police that no further harassment would occur, defendant Officer Stratton and another unidentified police officer subsequently drove into the facility without supervision.

No reasonable jury could conclude that the visit by Officer Stratton or the unidentified officer resulted from the Town's negligent supervision.  First, Sergeant Stratton was employed by the Boston Police Department, not the Framingham Police Department, and was simply not subject to the Town's supervision. See Kennedy, 617 F.3d at 532-33 (explaining that, under Massachusetts law, a municipality is liable for supervisory negligence only when it fails to prevent torts "committed by individual employees") (emphasis added).  Second, setting aside whether it constituted a tort, the Town cannot be liable for the actions of the unidentified police officer if he remains unidentified. See id.

Construing the record in a light most favorable to the plaintiffs, and because of the inherent subjectivity in the IIED claim, a reasonable jury could conclude that: (1) Officer Avila's May 3 visit was in retaliation for plaintiffs' complaint and therefore that it satisfied the elements of IIED, (2) the Town knew about Officer Brown's incident before Officer Avila's visit, and (3) the Town negligently failed to prevent the commission of IIED by Officer Avila. Cf. id.  Defendants' motion for summary judgment as to Count IV will, therefore, be denied.

## IV.  <u>Motion for Partial Summary Judgment Filed by Plaintiff Correia</u>

Plaintiff Correia moves for summary judgment against defendant Officer Brown on his claim for assault (Count V) on the

grounds that defendants purportedly conceded, when stating material facts in support of their own motion for summary judgment on plaintiffs' civil rights claims, that Officer Brown pointed a gun at Mr. Correia and told him to "move or get shot." Plaintiffs further argue that, in doing so, defendants effectively conceded the elements of assault.

Defendants did not, however, concede in their motion that Officer Brown brandished his firearm; they merely argued that, in the alternative, even if Officer Brown had done so, Mr. Correia's civil rights claim still failed to present genuine issues of fact.  Rather, the record demonstrates (and plaintiffs concede) that Officer Brown has denied, consistently and under oath, having ever threatened plaintiff with the gun.

Notwithstanding any careless verbiage in defendants' memorandum in support of their motion for summary judgment, there remains a genuine issue of material fact as to plaintiff Correia's claim for assault.  Mr. Correia states he was threatened with a gun and Officer Brown denies having done so. Such a dispute turns on the credibility of the parties, a determination most definitely within the province of the jury. Plaintiff Correia's motion for partial summary judgment will, therefore, be denied.

**ORDER**

In accordance with the foregoing and as previously ruled,

1)      the motion for summary judgment of defendant Officers
        Brown, Blue, Avila and Town of Framingham (Docket No.
        58) is, with respect to Counts I, II, III, VI, IX, X,
        XI, XII, **ALLOWED**, but is, with respect to Counts IV,
        VII, VIII, **DENIED**;

2)      the motion for summary judgment of defendant Sgt.
        Stratton (Docket No. 64) is **ALLOWED**; and

3)      the motion for partial summary judgment of plaintiff
        Correia (Docket No. 68) is **DENIED**.

**So ordered.**

                                /s/ Nathaniel M. Gorton
                                Nathaniel M. Gorton
                                United States District Judge
Dated September 3, 2013